IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THOMAS J. NAUMAN,<br><br>    Plaintiff,<br><br>v.<br><br>UTAH HIGHWAY PATROL, NEIL EKBERG,<br><br>    Defendants. | **ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>Case No. 2:14-cv-00560-CW-DBP<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Dustin B. Pead |

    This case was assigned to United States District Court Judge Clark Waddoups, who then referred it to United States Magistrate Dustin B. Pead under 28 U.S.C. § 636(b)(1)(B). (Dkt. No. 19.) On July 31, 2010, Defendant Trooper Neil Ekberg of the Utah Highway Patrol arrested Plaintiff Thomas J. Nauman on suspicion of driving under the influence (DUI). (Dkt. No. 53, pp. 1–2.) On July 31, 2014, Mr. Nauman filed a complaint in this court alleging Trooper Ekberg injured Mr. Nauman's shoulder while Trooper Ekberg transported him into the jail for processing after the arrest. (*See* Dkt. No. 1; *see also* Dkt. No. 23, p. 2; Dkt. No. 34, p. 2.) Mr. Nauman moved for summary judgment on his claims, (Dkt. No. 23), and Trooper Ekberg moved for summary judgment based on qualified immunity, (Dkt. No. 26). Mr. Nauman also filed a motion to add additional punitive damages, (Dkt. No. 40).

    On August 31, 2016, Judge Pead issued a Report and Recommendation recommending the court deny Mr. Nauman's motion for summary judgment and motion to add additional punitive damages and grant Trooper Ekberg's motion for summary judgment. (*See* Dkt. No. 53.) Mr. Nauman objected to Judge Pead's Report and Recommendation, (Dkt. Nos. 54, 55 & 57), and Trooper Ekberg also responded, (Dkt. No. 55).  Along with his objections, Mr. Nauman filed

a request for Judge Pead's recusal from this case. (Dkt. No 57.) The court has carefully reviewed all of the filings and the record in the case *de novo*. On January 4, 2017, the court heard oral argument, during which Mr. Nauman was allowed to fully explain his claims and objections to the Report and Recommendation. For the reasons explained below, the court APPROVES AND ADOPTS Judge Pead's Report and Recommendation in its entirety.

Consistent with Judge Pead's treatment of the case, the court liberally construes Mr. Nauman's filings and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citation omitted). But the court does not "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Upon *de novo* review of the record and the parties' filings, the court agrees with Judge Pead's reasoned conclusion that qualified immunity protects Trooper Ekberg from this suit. (*See* Dkt. No. 53.) "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity provides broad protection, shielding "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). On a motion for summary judgment, the court generally views the evidence in the light most favorable to the nonmoving party. *Amundsen v. Jones*, 533 F.3d 1192, 1198 (10th Cir. 2008). "When the defendant seeks summary judgment on the basis of qualified immunity, however, the plaintiff bears the initial burden of proving that: (1) the officer's actions violated a constitutional right, and (2) this right was clearly established at the time of the conduct at issue." *Id.* (citing *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000)). Where the defendant's

alleged actions, even if proven, did not violate a constitutional right, the court need go no further in its qualified immunity analysis and may grant summary judgment. *See Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).

Mr. Nauman has not provided evidence on which a reasonable juror could conclude that Trooper Ekberg's actions constituted excessive force in violation of Mr. Nauman's Fourth Amendment rights. As Judge Pead notes, even accepting the facts in the light most favorable to Mr. Nauman, Trooper Ekberg reasonably accommodated Mr. Nauman's medical ailments by handcuffing him in front of his body. (Dkt. No. 53, p. 6.) Later, at the crucial moment of the shoulder injury, Trooper Ekberg immediately released Mr. Nauman's arm upon Mr. Nauman's complaint that his arm "doesn't go that way." (*Id.*) Thus, considering Trooper Ekberg's actions as Mr. Nauman himself describes them, Mr. Nauman has not shown that Trooper Ekberg's action in pulling Mr. Nauman's arm violated his Fourth Amendment rights.

In an objection, Mr. Nauman also challenges his initial arrest on suspicion of DUI. (Dkt. No. 56, p. 8.) Judge Pead did not analyze the constitutionality of Mr. Nauman's initial arrest and handcuffing because Mr. Nauman's opposition to summary judgment did not appear to challenge the initial arrest and Mr. Nauman testified during his deposition that he did not believe the initial arrest violated his rights. (*See* Dkt. No. 53, p. 4 n.2.) The court concludes, however, that the initial stop and subsequent arrest were justified as a matter of law because Trooper Ekberg had reasonable suspicion that Mr. Nauman was impaired. As Judge Pead recites, Trooper Ekberg observed Mr. Nauman committing traffic violations, including failing to stop at a stop sign, failing to signal before turning, and failing to pull over when Trooper Ekberg activated the flashing lights on his police car. (Dkt. No. 53, p. 1.) The Tenth Circuit has stated, "our precedent counsels that driving conduct alone can establish reasonable suspicion of impairment, and thus,

no additional indicium of intoxication is necessary to justify a roadside sobriety test." *Amundsen*, 533 F.3d at 1200 n.4. During the stop, Trooper Ekberg observed conduct that provided additional evidence of impairment. Mr. Nauman stated he took morphine earlier that day. (Dkt. No. 53, p. 1.) Trooper Ekberg administered field sobriety tests, which Mr. Nauman failed. (*Id.*) The law does not require Trooper Ekberg to adopt an innocent interpretation of Mr. Nauman's driving and subsequent behavior where the facts as a whole reasonably suggested Mr. Nauman was impaired. *See United States v. Arvizu*, 534 U.S. 266, 277 (2002) ("A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct."). The court has reviewed the dash camera video of the stop, (Dkt. No. 29), and agrees with Mr. Nauman that his speech did not appear slurred. Nevertheless, as discussed above, Trooper Ekberg observed other indicia of impairment and, at the very least, "received no clear refutation of the earlier suspicion of intoxication." *Amundsen*, 533 F.3d at 1200. Accordingly, Mr. Nauman has failed to demonstrate that his initial arrest violated the Fourth Amendment.

The court understands that, from his perspective, Mr. Nauman believes he was treated harshly. Indeed, Mr. Nauman's encounter with Trooper Ekberg appears to have been life-changing for Mr. Nauman and his family. Nevertheless, the evidence presented shows Mr. Nauman is without grounds to challenge that Trooper Ekberg acted appropriately within the mandates of the Constitution and the discretion granted to officers to carry out their duties.

Mr. Nauman cites an assistant prosecutor's statements apologizing for the arrest, another driver's allegedly worse driving, the absence of slurred words during the stop, and allegations of misconduct by officers who are not a part of this case as evidence that Trooper Ekberg violated his civil rights. (*See* Dkt. Nos. 54 & 56.) Mr. Nauman also asserts that the Utah Attorney General's Office has hindered his collection of testimony from other officers at the jail, a

circumstance which Defendant's counsel vigorously disputes. Unfortunately, these points are immaterial to the court's finding that qualified immunity protects Trooper Ekberg from suit here.

Accordingly, for the reasons stated in Judge Pead's Report and Recommendation, (Dkt. No. 53), and the court's additional analysis of the facts and law above, the court hereby ORDERS as follows:

- Mr. Nauman's Motion for Summary Judgment (Dkt. No. 23) is DENIED.
- Trooper Ekberg's Motion for Summary Judgment (Dkt. No. 26) is GRANTED and Mr. Nauman's claims against the Defendants are therefore dismissed.

Furthermore, the court DENIES Mr. Nauman's Motion to Add Additional Punitive Damages (Dkt. No. 40). The court does not condone counsel's failure to obtain Mr. Nauman's stipulation to an extension in advance of filing the motion as stipulated and failure to correct the misunderstanding thereafter. The court recognizes, however, that counsel made good faith attempts to obtain a stipulation and was relying on a record of other stipulated extensions. (*See* Dkt. No. 55, pp. 3–4.) Additionally, the court finds no prejudice accrued to Mr. Nauman by the mistaken stipulation or the extension itself. Trooper Ekberg's counsel did not use Mr. Nauman's signature on the motion for extension and Trooper Ekberg filed his reply memorandum four days after the court granted the extension. (*See id.* at 4–5.)

Finally, the Court DENIES Mr. Nauman's request for Judge Pead's recusal in this case. (Dkt. No. 57.) Adverse rulings rarely constitute a proper basis for recusal and Mr. Nauman provides no grounds to suggest Judge Pead acted with any partiality in this case. *See Liteky v. United States*, 510 U.S. 540, 555 (1994); *Hinman v. Rogers*, 831 F.2d 937, 938–40 (10th Cir. 1987).

DATED this 9th day of January, 2017.

                                                BY THE COURT:

                                                Clark Waddoups
                                                United States District Judge